# UNITED STATES  DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**JOHN FREEMAN WILLIAMS**                    **CIVIL ACTION**

**VERSUS**                                                      **NO.  10-1521**

**STATE OF LOUISIANA**                          **SECTION "F"(4)**

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

## I.    Factual Background

The petitioner, John Freeman Williams ("Williams"), is a convicted felon currently released on supervised parole.[2]  Williams was charged by bill of information with possession of cocaine with the intent to distribute arising from events occurring on June 20, 2007.[3]

---

[1] Under 28 U.S.C. § 2254(e)(2), an Evidentiary Hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2] Rec. Doc. No. 1.  At the time of filing, Williams, as a parolee, was in custody for purposes of habeas jurisdiction.  *See Maleng v. Cook*, 490 U.S. 488 (1989).

[3] St. Rec. Vol. 1 of 2, Bill of Information, 7/18/07.

On August 7, 2007, Williams entered a plea of not guilty at his arraignment.[4]  Williams thereafter filed four motions to suppress, which were heard and denied by the state trial court on November 14, 2007.[5]  That same day, Williams thereafter entered a plea of guilty to the amended charge of possession of cocaine.[6]  The Trial Court sentenced Williams to serve five years at hard labor.[7]

Williams's conviction and sentence became final 30 days later, on Friday, December 14, 2007, when he did not appeal or seek reconsideration of his sentence.  *Roberts v. Cockrell*, 319 F.3d 690, 694-95 (5th Cir. 2003) (under federal habeas law, a conviction is final when the state defendant does not timely proceed to the next available step in the state appeal process); *see Cousin v. Lensing*, 310 F.3d 843, 845 (5th Cir. 2002) (petitioner's guilty pleas became final at the end of the five-day period for filing a notice of appeal under La. Code Crim. P. art. 914).[8]

---

[4]St. Rec. Vol. 1 of 2, Arraignment Minutes, 8/7/07.

[5]St. Rec. Vol. 1 of 2, Motion Hearing Minutes, 11/14/07; Motion to Suppress, 10/10/07; Motion to Suppress Evidence, 10/18/07; Motion to Suppress Confession, 11/5/07; Motion to Suppress, 11/5/07.  The record, supplemented by the Court's research, reflects that Freeman filed writ applications in the Louisiana First Circuit Court of Appeal and the Louisiana Supreme Court seeking to compel the trial court to address his motions to suppress.  The court's both denied relief in light of the scheduled motion hearing.  *See* St. Rec. Vol. 1 of 2, La. S. Ct. Order, 2007-KH-2269, 12/14/07 (referencing Louisiana First Circuit Writ No. 2007-KW-1572); La. S. Ct. Letter, 2007-KH-2269, 11/27/07 (showing postmark 11/2/07 and referencing Louisiana First Circuit Writ No. 2007-KW-1572).

[6]St. Rec. Vol. 1 of 2, Plea Minutes, 11/14/07; Waiver of Constitutional Rights and Plea of Guilty, 11/14/07.

[7]*Id.*

[8]The *Cousin* court recognized that the failure to move timely for appeal under La. Code Crim. P. art. 914 render the conviction and sentence final at the expiration of that period. *State v. Counterman*, 475 So.2d 336, 338 (La. 1985). At the time of *Cousin*, La. Code Crim. P. art. 914 required that a criminal defendant move for leave to appeal within five days of the order or judgment being appealed or of a ruling on a timely motion to reconsider a sentence.  Article 914 was later amended by La. Acts 2003, No. 949, § 1 to provide 30 days for filing of the notice of appeal.

## II.   **State Procedural History**

On December 19, 2007, upon inquiry by Williams,[9] the state trial court entered on its record minutes that Williams had not filed a motion to reconsider his sentence and that he should file a motion if he sought that relief.[10]

Williams submitted a writ application on January 18, 2008, to the Louisiana First Circuit Court of Appeal seeking a transfer of his attached motion for reconsideration of sentence to the Trial Court for review.[11]  The Court granted the application on March 28, 2008, for the sole purpose of transferring the application to the Trial Court for consideration as a motion to reconsider the sentence.[12]  Williams also submitted a motion to reconsider directly to the Trial Court on April 22, 2008.[13]

In the meantime, on January 24, 2008, Williams submitted an application for post-conviction relief to the state trial court raising three claims:[14] (1) his sentence was excessive and disproportionate to sentences imposed in other similar cases; (2) the conviction upon his guilty plea was unconstitutional because the evidence was illegally and unconstitutionally obtained; and (3) his appointed counsel gave ineffective assistance where he was unprepared for trial which forced

---

[9]In his later filed writ application to the Louisiana First Circuit Court of Appeal, Williams indicated that he called the trial court clerk's office to inquire about his motion to reconsider, and he was advised that no such motion had been filed.  *See* St. Rec. Vol. 1 of 2, 1st Cir. Writ Application, 2008-KW-0151, 1/22/08 (dated 1/18/08).

[10]St. Rec. Vol. 1 of 2, Minute Entry, 12/19/07.

[11]St. Rec. Vol. 1 of 2, 1st Cir. Writ Application, 2008-KW-0151, 1/22/08 (dated 1/18/08).

[12]St. Rec. Vol. 1 of 2, 1st Cir. Order, 2008-KW-0151, 3/28/08.

[13]St. Rec. Vol. 1 of 2, Motion to Reconsider Sentence, 4/22/08; Memorandum in Support of Motion for Reconsideration of Sentence, 6/13/08.

[14]St. Rec. Vol. 1 of 2, Uniform Application for Post Conviction Relief, 1/29/08 (dated 1/24/08); Memorandum in Support, 1/29/08 (dated 1/24/08).

Williams to enter a plea of guilty and where he had a conflict of interest arising from Williams's child support enforcement proceedings.

At a hearing held on October 29, 2008, the Trial Court denied the motion to reconsider the sentence and the application for post-conviction relief.[15]  Williams filed a notice of intent to seek writs with the Trial Court on November 14, 2008.[16]  The Court set the return date for November 29, 2008.[17]

Williams submitted an untimely application to the Louisiana First Circuit on December 11, 2008, raising only two grounds for relief:[18] (1) the evidence was illegally and unconstitutionally obtained in violation of the Constitution and should have been suppressed; and (2) his appointed counsel gave ineffective assistance at the suppression hearing and had a conflict of interest where he presided as the officer over Williams's child support enforcement hearing.  In connection with the second claim, Williams asked the court to subpoena the records from that enforcement hearing. The Louisiana First Circuit denied the writ and the request for subpoena on April 3, 2009, without stated reasons.

---

[15]St. Rec. Vol. 1of 2, Hearing Minutes, 10/29/08; Motion Hearing Transcript, pp. 4,31-32, 10/29/08.  The Court adopted the reasons presented in the State's opposition to the application.  St. Rec. Vol. 1 of 2, Motion Hearing Transcript, p. 32, 10/29/08; State's Response, 3/26/08.

[16]St. Rec. Vol. 1 of 2, Notice of Intent, 11/14/08 (dated 11/10/08).

[17]St. Rec. Vol. 1 of 2, Trial Court Order, 11/15/08.

[18]St. Rec. Vol. 2 of 2, 1st Cir. Writ Application, 2008-KW-2573, 12/11/08 (dated 12/11/08).

Williams submitted a writ application to the Louisiana Supreme Court on April 29, 2009, raising the same two claims for consideration.[19]  The Court denied the application without stated reasons on March 5, 2010.[20]

## III.   Federal Petition

On May 19, 2010, the clerk of this Court filed Williams's petition for federal habeas corpus relief in which he alleged three grounds for relief:[21] (1) His sentence was disproportionate to the sentence imposed in similar cases; (2) his conviction was obtained in violation of the Constitution; and (3) his counsel gave ineffective assistance in preparing for trial and because he had a conflict of interest.[22] In his memorandum in support of the petition, he argued that the evidence was illegally and unconstitutionally obtained in violation of the Constitution.[23]  He also added additional arguments in support of his claim of ineffective assistance of counsel.

The State filed a response in opposition to Williams's petition recognizing that he has only raised two claims, the second and third listed above.  Based on that, the State concedes that the petition was timely filed and that the claims raised were exhausted in the state courts.[24]  In addition,

---

[19]St. Rec. Vol. 2 of 2, La. S. Ct. Writ Application, 09-KH-1002, 5/6/09 (postmarked and dated 4/29/09).

[20]*State ex rel. Williams v. State*, 28 So.3d 999 (La. 2010); St. Rec. Vol. 2 of 2, La. S. Ct. Order, 2009-KH-1002, 3/5/10.

[21]Rec. Doc. No. 1.

[22]Rec. Doc. No. 1.

[23]Rec. Doc. No. 1, p. 20.

[24]Rec. Doc. No. 4.

the State argues that the two claims are without merit.  The State later amended its opposition response for the sole purpose of correcting the Table of Contents.[25]

## IV.    General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[26] applies to this petition, which is deemed filed in this court under the federal mailbox rule on May 10, 2010.[27]  The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c) (2006)).

The State has not presented any procedural defenses to Williams's petition, conceding that his claims are exhausted and his petition is timely filed.  The Court's review of the record confirms that the petition was timely filed and the two claims recognized by the State have been exhausted and none are in procedural default.

---

[25]Rec. Doc. Nos. 5, 7.

[26]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996.  *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[27]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  The clerk of court filed Williams's federal habeas petition on May 19, 2010, when pauper status was granted.  Williams's signature on the petition is dated May 10, 2010.  This is presumed to be the earliest date on which he could have delivered the documents to prison officials for mailing.

However, Williams also raises a third claim, challenging the disproportionality of this sentence. Williams concedes in his petition that he abandoned this claim after it was heard in his motion to reconsider in the Trial Court. He indicates, and the record shows, that he did not seek further review of the denial of the motion to reconsider the sentence or this claim. The Court finds, therefore, that Williams did not exhaust available state court remedies as to this claim. Nevertheless, because the Court finds the claim to be without merit, it can be addressed without requiring exhaustion. 28 U.S.C. § 2254(b)(2).

## V.  **Standards of Review on the Merits**

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000). It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the Court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA. The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable

application of clearly established federal law" as determined by the United States Supreme Court. *Hill*, 210 F.3d at 485.

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210 F.3d at 485. A state court's decision can involve an "unreasonable application" of federal law if it either: (1) correctly identifies the governing rule but then applies it unreasonably to the facts; or (2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable. *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law. *cf. Wright v. West*, 505 U.S. 277, 304 (1992). The court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law. *See e.g., Id.*, at 305; *see also Chambers v. Johnson*, 218 F.3d 360, 364 (5th Cir.), *cert. denied*, 531 U.S. 1002 (2000). "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" (brackets in original) *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)); *Bell v. Cone*, 535 U.S. 685, 699 (2002)).

Thus, under the "unreasonable application" determination, the court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230,

246 (5th Cir. 2002).  The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner.  *Price*, 538 U.S. at 641 (quoting  *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006).

## VI.   Disproportionate Sentence (Claim No. 1)

Williams contends that his five year sentence imposed for possession of cocaine was disproportionate to sentences imposed in similar cases.  Williams raised this claim to the state trial court in his motion to reconsider the sentence, which was denied without stated reasons at the hearing held on October 28, 2008.

Federal courts accord broad discretion to a state trial court's sentencing decision which falls within the statutory limits.  *Haynes v. Butler*, 825 F. 2d 921, 923-24 (5th Cir. 1987); *Turner v. Cain*, 199 F.3d 437 (5th Cir. 1999) (unpublished) (sentence was within Louisiana statutory limits and within trial court's discretion, therefore petitioner failed to state cognizable habeas claim for excessive sentence).  If a sentence is within the statutory limits, a federal habeas court will not upset the terms of the sentence unless it is grossly disproportionate to the gravity of the offense.  *Harmelin v. Michigan*, 501 U.S. 957 (1991); *Solem v. Helm*, 463 U.S. 277 (1983).

"[W]hen a threshold comparison of the crime committed to the sentence imposed leads to an inference of 'gross disproportionality,'" a court then considers (a) the sentences imposed on other criminals in the same jurisdiction; and (b) the sentences imposed for commission of the same offense in other jurisdictions.  *Smallwood v. Johnson*, 73 F.3d 1343, 1346-47 (5th Cir. 1996); *McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir. 1992).  When a habeas petitioner has been sentenced under a habitual offender statute, a federal court must consider "the seriousness of his most recent offense, not as it stands alone, but in the light of his prior offenses."  *McGruder*, 954 F. 2d at 316.

The United States Supreme Court has stated that "the Eighth Amendment does not require strict proportionality between crime and sentence. Instead, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Ewing v. California*, 528 U.S. 11, 23 (2003) (*quoting Harmelin*, 501 U.S. at 1001 (Kennedy J., concurring in part and concurring in judgment)). The Supreme Court has recognized that only the rare case will reach the level of gross disproportionality. *Id.*, 538 U.S. at 30. As noted above, that disproportionality is judged by whether similar sentences have been imposed for the same offense. *Smallwood*, 73 F.3d at 1346-47.

Williams was convicted on his plea of guilty to the reduced charge of possession of cocaine. Under Louisiana law, the crime carried with it a sentencing range of not more than five years, with or without hard labor, and a possible fine of not more than $5,000.00. La. Rev. Stat. Ann. § 40:957(C). The sentence imposed upon Williams was within the statutory range and was imposed after a plea to an offense lesser to the one originally charged.

As to proportionality, the Louisiana courts routinely sentence defendants to a term of five years for possession of cocaine after entry of a guilty plea where the offender, like Williams, had at least two prior felonies.[28] *State v. Gilmore*, __ So.3d __, 2010 WL 5027531, at *3-4 (La. App. 3d Cir. Dec. 8, 2010) (five years imposed after guilty plea where defendant had four prior felony convictions); *State v. Allen*, 36 So.3d 1091 (La. App. 3d Cir. 2010) (five years and a fine of $2000 fine imposed after guilty plea where defendant had four prior felonies); *State v. Thomas*, 18 So.3d 127 (La. App. 3d Cir. 2009) (five years imposed after guilty plea where defendant had two prior

---

[28] When Williams first rejected the State's offer of five years, counsel reported to the Court "I want the record to reflect that he was offered five (5) years. He has been advised of that fact. I have advised him that if he is found guilty, the State is going to Multiple Bill him, and his time will be substantially more." St. Rec. Vol. 1 of 2, Motion Transcript, p. 5, 11/14/07 (see also p. 3). The Court made reference to four prior felonies: forgery, armed robbery, distribution of cocaine, and fraud. *Id.*, p.3.

drug convictions); *State v. Williams*, 969 So.2d 744 (La. App. 3d Cir. 2007) (five years and $1500 fine imposed after guilty plea where defendant had three prior drug convictions); *State v. Fairley*, 822 So.2d 812 (La. App. 5th Cir. 2002) (five years imposed after guilty plea where defendant had prior armed robbery conviction); *State v. Hill*, 756 So.2d 1254 (La. App. 2d Cir. 2000) (five years imposed after guilty plea where defendant had two drug and other felony convictions).

For the reasons discussed above, Williams's sentence is not disproportionate or unconstitutionally excessive under federal law.  Williams attempts to recast the nature of his arrest as a simple traffic stop for failing to ride with a light on his bicycle, rather than the more serious crime of possession of a controlled dangerous substance.  The actual charge and his ultimate plea of guilty to possession of cocaine clearly indicated otherwise.  Because it is clear that the sentence imposed in the instant case is not grossly disproportionate, he has failed to state a violation of federal law.

The state courts' denial of relief on this issue is neither contrary to, or an unreasonable application of, federal law.  He is not entitled to relief on this claim.

## VII.   Illegal Search and Seizure (Claim No. 2)

Williams alleges that the arresting officer did not have probable cause to stop, search, and arrest him because Williams did not give the officer any indication that he was doing something wrong.  He further argues that the officer's testimony at the suppression hearing that Williams did not stop as instructed cannot stand as a basis for probable cause.  He alleges  further that the officers were otherwise without probable cause to stop him when the stop was based on his riding a bicycle at night with no lights.  Williams also contends that the scope of the search went beyond that which was in his immediate control.  It extended into an abandoned lot such that it was not a search at all.

The State argues that the officers decision to stop Williams was reasonable, because he was riding a bicycle at night without headlights in violation of La. Rev. Stat. Ann. § 33:329. The State further contends that the state trial court considered the issue regarding the propriety of the search and the scope of the search during the suppression hearing. Therefore, the trial judge's findings are entitled to deference and were not contrary to or an unreasonable application of Supreme Court law.

Williams and his counsel raised these arguments in the motions to suppress filed with the state trial court and which were considered at the pretrial hearing held November 14, 2007. At the hearing, the Court heard the testimony of arresting officers, Brad Cadiere and Eric Ricker. Both officers testified as to the reasons for stopping Williams and confirmed that Williams said that he did not immediately stop because he had no brakes. The Court also heard his testimony on cross-examination regarding how the officers located the white napkin as the object that Williams threw into the empty lot before he stopped.

The Trial Court denied the motion finding that there was probable cause to stop Williams based on the fact that he was riding a bike at night without lights in a high crime area and based on the officers' narcotics experience. In addition, the Court noted that, after the officers observed Williams throw the paper towel under a car in the lot, it was the only paper towel found beneath the car, although other items were present. The Court further considered the testimony that when the officer opened the towel, Williams confirmed it was his crack cocaine.

These arguments were raised again by Williams in his application for post-conviction relief. The Trial Court, in adopting the State's opposition to that application, again resolved there was a basis for the officers' "reasonable suspicion" which advanced to "probable cause" and the seizure was proper. The Louisiana First Circuit and the Louisiana Supreme Court each denied relief without

stated reasons on Williams's writ applications to those courts.  Thus, the state trial court provided the last reasoned decision on this issue.  *Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991) (when the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, the federal court will presume that the state court has relied upon the same grounds as the last reasoned state court opinion).

In *Stone v. Powell*, 428 U.S. 465 (1976), the United States Supreme Court held "that where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."  *Id.*, 428 U.S. at 494.  A "full and fair hearing means that 'where there are <u>facts</u> in dispute, full and fair consideration requires consideration by the fact-finding court, and at least the availability of meaningful appellate review by a higher state court.'"  (emphasis in original) *Davis v. Blackburn*, 803 F.2d 807, 808 (5th Cir. 1986) (per curium) (quoting *O'Berry v. Wainwright*, 546 F.2d 1204, 1213 (5th Cir. 1977)).  Absent any plea or proof by petitioner that he was denied a full and fair hearing in state court, his request for federal habeas relief based upon a Fourth Amendment violation is precluded.  *Stone*, 428 U.S. at 494-95 n.37; *Bell v. Lynaugh*, 828 F.2d 1085, 1091-92 (5th Cir. 1987).

Thus, "in the absence of allegations that the processes provided by a state to fully and fairly litigate fourth amendment claims are routinely or systematically applied in such a way as to prevent the actual litigation of fourth amendment claims on their merits," petitioner's claim cannot succeed. *Williams v. Brown*, 609 F.2d 216, 220 (5th Cir. 1980); *Christian v. McKaskle*, 731 F.2d 1196, 1199 (5th Cir. 1984).  The bar of *Stone* applies despite any state trial court error in deciding the merits of

petitioner's Fourth Amendment claim. *Andrews v. Collins*, 21 F.3d 612, 631-32 (5th Cir. 1994); *Christian*, 731 F.2d at 1199 n.1; *Swicegood v. Alabama*, 577 F.2d 1322, 1324-25 (5th Cir. 1978).

Williams does not argue or contend that he was denied a full and fair hearing on the motion to suppress. The record shows that Williams was afforded a full and fair hearing before the Trial Court on both the motion to suppress and the application for post-conviction relief. After reviewing the record, the Court finds that "the material facts were adequately developed in state court, and [petitioner] has not alleged any undeveloped evidence sufficient to call into question the reliability of the state court's determination of [his] federal claims." *Andrews*, 21 F.3d at 631.

The State has provided Williams with the opportunity to litigate his Fourth Amendment claims fully and fairly. The fact that he may disagree with the state courts' decision to deny relief is not sufficient to overcome the *Stone* bar to federal review. *Janecka v. Cockrell*, 301 F.3d 316, 320-21 (5th Cir. 2002). Accordingly, *Stone* bars review of this claim. *Id.*; *Williams v. Collins*, 16 F.3d 626, 637-38 (5th Cir. 1994). Williams is not entitled to further consideration or relief on this claim.

## VIII.   Ineffective Assistance of Counsel (Claim No. 3)

Williams contends that his trial counsel provided ineffective assistance because he failed to subpoena defense witnesses for trial, failed to challenge the traffic stop and arrest, failed to require testing of the substance seized, failed to properly advise him to keep him from testifying at the suppression hearing, and failed to conduct an independent investigation to challenge the State's case. He also suggests that counsel was conflicted because of his role in Williams's child support enforcement proceedings. The State contends that each of Williams's grounds are without merit and should be denied.

14

Williams raised these arguments in his application for post-conviction relief before the Trial Court. In adopting the State's reasoning in its opposition, the Trial Court denied relief on this claim pursuant to the standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). This was the last reasoned decision on the issue, because the appellate court and the Louisiana Supreme Court denied relief without stated reasons. *Ylst*, 501 U.S. at 802.

The issue of ineffective assistance of counsel is a mixed question of law and fact. *Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir. 1994). When a defendant pleads guilty and then seeks habeas review based upon allegations of ineffective assistance of counsel the proper standard to be applied is the standard established by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). Thus, the question before this court is whether the state courts' denial of relief was contrary to, or an unreasonable application of, the United States Supreme Court decision in *Strickland*.

In *Strickland*, the Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel. First, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.*, at 687-88; *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir. 1998). Under *Hill*, which applies *Strickland* in the guilty plea context, the first prong is satisfied by a showing that "counsel's representation fell below an objective standard of reasonableness." *Hill*, 474 U.S. at 57 (citing *Strickland*, 466 U.S. at 687-88). "[I]t is necessary to 'judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" *Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993) (quoting *Strickland*, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within

a wide range of reasonable representation. *See Crockett v. McCotter*, 796 F.2d 787, 791 (5th Cir. 1986); *Mattheson v. King*, 751 F.2d 1432, 1441 (5th Cir. 1985).

Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*, at 694; *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999). "In order to satisfy . . . [*Strickland*'s] 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. Furthermore, however, "[t]o meet the prejudice prong, the [petitioner] must affirmatively prove, and not merely allege, prejudice." *DeVille v. Whitley*, 21 F.3d 654, 659 (5th Cir. 1994); *Theriot v. Whitley*, 18 F.3d 311, 314-15 (5th Cir. 1994).

In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. *Kimler*, 167 F.3d at 893. On habeas review, scrutiny of counsel's performance "must be highly deferential" and the court will "indulge a strong presumption that strategic or tactical decisions made after an adequate investigation fall within the wide range of objectively reasonable professional assistance." *Moore v. Johnson*, 194 F.3d 586, 591 (5th Cir. 1999) (citing *Strickland*, 466 U.S. at 689-90); *Mattheson*, 751 F.2d at 1441.

## A.   Failure to Subpoena Witnesses

Williams argues that he gave witness information to counsel prior to trial, and counsel failed to subpoena defense witnesses for trial. He concedes that counsel subpoenaed witnesses, but he refers to them as "state witnesses." However, the Fifth Circuit has held that complaints of uncalled witnesses are not favored in federal habeas corpus review of an ineffective assistance of counsel claim,

because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have stated are largely speculative. *Day v. Quarterman,* 566 F.3d 527, 538 (5th Cir. 2009).

At the post-conviction hearing, Williams admitted that he did not give any names or addresses to his counsel prior to trial.[29]  He simply told him that there were two people nearby when the arrest was made.  His trial counsel, Bill Dunckelman, also testified at the hearing and denied that Williams ever mentioned witnesses to him.[30]

Because Williams has not presented any evidence to the state courts or this federal court that any particular witness would have provided favorable testimony that would have affected the outcome of the proceeding,  counsel cannot be deemed ineffective for failing to call witnesses other than those subpoenaed to the motion hearing and for trial.

Williams has failed to establish that counsel's performance fell below standards of reasonableness.  He is not entitled to relief on this claim.

### B.    Failure to Adequately Challenge the Stop, Arrest, and Search

Williams next complains that his counsel's assistance was ineffective because he failed to adequately challenge the traffic stop, arrest, and search.  He argues that counsel should have been aware of the fact and argued at the suppression hearing that the officers did not activate a siren or lights to effect the stop as required by La. Rev. Stat. Ann. § 14:108.1(a), which he contends requires an officer to use lights and sirens to effectuate a traffic stop.  He complains, instead, that the officer simply yelled for him to come to him, and therefore his actions were not in compliance with the law.

---

[29]St. Rec. Vol. 1 of 2, Motion Hearing Transcript, pp. 16, 20, 11/14/07.

[30]*Id.*, p. 22.

Williams argues that his counsel should have challenged the officers' actions and their exercise of restraint over his person.

The State opposes this contention arguing that Williams misinterprets the statute, and that there was a justification for the stop as detailed during the suppression hearing. The State further contends that the stop and arrest were reasonable and did not violate the state statute.

As noted above, the state courts denied relief on this claim on post-conviction review, and with the benefit of the testimony of Williams' counsel at the hearing held October 29, 2008.[31]

The record clearly indicates that Williams's appointed counsel did in fact file a motion to suppress his statements and the evidence, arguing in the latter motion that the officers made an illegal stop and search and lacked reasonable suspicion and probable cause for the stop, questioning and search.[32] Thus, to the extent Williams suggests that his counsel did not challenge the stop or the evidence seized, his claim is without factual basis.

Williams also alleges that counsel should have argued at the suppression hearing that the stop was invalid, because the police officers violated Louisiana law, specifically La. Rev. Stat. Ann. § 14:108.1(A). Williams is again without support for his claim.

First, the statute he refers to does not require a police officer to use lights and a siren at every traffic stop. The statute, La. Rev. Stat. Ann. § 14:108.1(A), instead sets for the elements of the criminal offenses of flight from an officer and aggravated flight from an officer, crimes not relevant to the instant case:

> No driver of a motor vehicle or operator of a watercraft shall intentionally refuse to
> bring a vehicle or watercraft to a stop knowing that he has been given a visual and

---

[31]St. Rec. Vol. 1of 2, Motion Hearing Transcript, 10/29/08.

[32]St. Rec. Vol. 1 of 2, Motion to Suppress, 11/5/07; Motion to Suppress Confession, 11/5/07.

audible signal to stop by a police officer when the officer has reasonable grounds to believe that the driver has committed an offense. The signal shall be given by an emergency light and a siren on a vehicle marked as a police vehicle or marked police watercraft.

Although Williams was not charged with flight from an officer, Williams's failure to immediately stop was addressed at the suppression hearing, as part of the basis for the State's "reasonable suspicion" argument.  The officers were on foot, not in their vehicle,  when they called for Williams to stop.[33]  Williams defense to his failure to immediately stop at that time, as it is still here, was that his bicycle brakes did not work.  He has never alleged and there was no basis for counsel to allege that Williams did not hear the officers tell him to stop or did not know that he was being stopped because the officers did not use lights and a siren.

Officer Cadiere testified at the suppression hearing that they motioned for Williams and orally advised Williams to stop and he continued to ride past them.[34]  On cross-examination, the officer implied that this led him to believe Williams was doing something wrong.[35]  Williams also threw the paper down before stopping.  Counsel also elicited testimony that Williams told the officer that he could not stop because the brakes on the bicycle were broken.[36]  The officer actually confirmed that for himself.[37]  Officer Ricker also testified that they orally advised and motioned for Williams to stop and he continued to ride past them.[38]

---

[33]St. Rec. Vol. 1 of 2, Motion Transcript, pp. 9, 19, 11/14/07.

[34]*Id.*, p. 9.

[35]*Id.*, p. 11.

[36]*Id.*

[37]*Id.*, p. 12.

[38]*Id.*, pp. 19-20.

Based on the information elicited at the suppression hearing, and Williams' pleadings before this Court, there was no factual basis for counsel to question why the officers did not use lights and sirens to effectuate the stop. Williams has not shown a basis for counsel to have urged such an argument, or that such an argument was relevant to his case. *See Smith v. Puckett*, 907 F.2d 581, 585 n. 6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim."); *see also*, *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990) (concluding that "counsel is not required to make futile motions or objections.").

Williams has not shown that his counsel's performance at the suppression hearing fell below the level of reasonable and competent counsel or that he was otherwise prejudice by counsel's actions. Therefore, the state courts' denial of relief on this claim was not contrary to, or an unreasonable application of *Strickland* or *Hill*. Williams is not entitled to relief on this claim.

### C.   <u>Failure to Have the Substance Tested</u>

Williams alleges that his counsel erred in failing to have the substance that was seized tested to assure that it was cocaine. The record reflects that immediately after the officer found the drugs, Williams admitted that it was his crack cocaine and marijuana.[39] He has not shown that any drug testing would have resulted in results favorable to him, and he therefore has not established any prejudice arising from counsel's failure to have the drugs tested. *Kron v. Tanner*, No. 09-7572, 2010 WL 3470465, at *2 (E.D. La. Aug. 30, 2010) (Vance, J) ("Kron also contends his attorneys were ineffective in failing to have the cocaine and drug paraphernalia tested but fails to be make the required showing that scientific tests would have yielded any results favorable to him.").

---

[39]*Id.*, p. 16.

Counsel indicated at the post-conviction hearing that he had subpoenaed the State's forensic scientist and the evidence custodian for trial.  This would indicate that counsel intended to question these persons with regard to the substance seized.  By entering the plea, Williams gave up his right to trial, and there was nothing left for counsel to challenge.

Williams has not shown that counsel acted unreasonably or that, but for counsel's failure to independently test the drugs, he would not have entered the plea to the lesser charge.

### D.    Failure to Allow Williams to Testify at the Suppression Hearing

Williams complains that he wanted to testify at the hearing on the motion to suppress, but counsel would not allow him to do so.  He claims that if he testified at the motion to suppress hearing, that there was a reasonable probability that the court would have granted the motion and suppressed the evidence.  He contends that his counsel provided him with wrong advice, because his testimony would not have been used to attack his credibility at trial pursuant to La. Code Crim. P. art. 703(E).

The State does not directly address this issue in its submission, but generally argues that the Trial Court found that Williams counsel did not provide ineffective assistance.

At the suppression hearing, Williams's counsel made the following statement on the record regarding Williams's desire to testify, at which time Williams indicated he did not want to testify:[40]

| | |
|---|---|
| BY MR. DUNCKELMAN: | Your Honor, I believe Mr. Williams wants to testify for the Motion to Suppress the Confession. |
| BY THE COURT: | What about the use of what he says in the Motion to Suppress in the Trial? |
| BY MR. DUNCKELMAN: | I'm sorry? |

---

[40]St. Rec. Vol. 1of 2, Motion Transcript, pp. 22-23, 11/14/07.

| | |
|---|---|
| BY THE COURT: | What about the use of what he says in the Motion to Suppress in the Trial? |
| BY MR. DUNCKELMAN: | I have advised him that anything he says in this Motion, in my opinion, can be used during the Trial. And I believe – I have already told him that I believe it would not be in his best interest to testify at Trial. But, he has repeatedly told me that he wants to testify during this Motion. |
| BY THE COURT: | Okay – |
| BY MR. DUNCKELMAN: | I think he needs to realize that anything he says can be used against him and will be used against him, during that Trial.  Knowing that, do you still want to testify? |
| A. [by Williams] | I don't. |
| BY MR. DUNCKELMAN: | All right, he is not going to testify, Your Honor.  We will submit it. |

When the Trial Court heard the claim on post-conviction review, Williams testified regarding his decision to not testify.[41]  He indicated that his lawyer kept advising him that whatever he was to say at the hearing would be used against him at trial, so he was convinced not to testify.[42]

Dunckelman also acknowledged at the post-conviction hearing that Williams expressed an interest in testifying at the suppression hearing.[43]  He recalled, however, that the trial judge asked Williams if he was aware that his testimony could be used at trial.[44]  He testified that he discussed the issue with Williams and advised him that under La. Code Crim. P. art. 703, his testimony could

---

[41]St. Rec. Vol. 1 of 2, Motion Hearing Transcript, p. 12, 10/29/08.

[42]*Id*., p. 12.

[43]*Id*., p. 23.

[44]*Id*.

be used against him at trial, including reference to his two previous convictions.[45]  He clarified that, while he may not have mentioned it on the transcript, he did advise Williams that he would be asked about his prior convictions at the hearing.[46]

Williams's post-conviction counsel and the State argued to the state trial court regarding whether Dunckelman advised Williams that his testimony could be used to test his credibility or whether generally the testimony could be used against him at Trial.  In addressing counsel's argument, the Trial Court emphasized that Dunckelman testified that, while it was not in the hearing transcript, his conversations with Williams included instructions regarding the use of the testimony to challenge his credibility.[47]  The Court intimated that Dunckelman's credibility prevailed over that of Williams.[48]

Based on the testimony of counsel, the record indicates that counsel properly advised Williams as to the potential use of his hearing testimony.  Based on that sound advice, Williams decided not to testify at the hearing.  It is also noteworthy that Williams acknowledged at the post-conviction hearing that his decision to enter the guilty plea was not based on counsel's advise not to testify; it was based on his belief that counsel did not subpoena witnesses and was not prepared for trial, a conclusion not borne out by the record as discussed in Williams's next issue.[49]

For these reasons, Williams has not presented anything to this Court that would indicate that counsel's performance was other than reasonable or that but for counsel's advice at the suppression

---

[45]*Id.*

[46]*Id.*, p. 24.

[47]*Id.*, pp. 29-30.

[48]*Id.*, p. 30.

[49]*Id.*, p. 15.

hearing he would not have entered the guilty plea.  The state courts' denial of relief on this claim

was not contrary to, or an unreasonable application of *Strickland* or *Hill.*  Williams therefore is not

entitled to relief on this claim.

### E.      Failure to Conduct Independent Investigation

Williams next contends that his counsel failed to conduct an independent investigation of

the case.  The State generally mentions Williams's contention, but simply indicates that the trial

court in its discretion believed counsel over a convicted felon.  Therefore, the State contends that

this claim lacks merit.

Williams fails to expound on this conclusory claim in his memorandum.  As mentioned

above, conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue

sufficient to support federal habeas relief.  *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000);

*United States v. Holmes,* 406 F.3d 337, 361 (5th Cir.2005) ("mere conclusory allegations in support

of a claim of ineffective assistance of counsel are insufficient to raise a constitutional claim.") (citing

*Green v. Johnson,* 160 F.3d 1029, 1042 (5th Cir.1998)).

Furthermore, the Supreme Court addressed the duty to investigate in *Strickland*, stating that

attorneys have "a duty to make reasonable investigations or to make a reasonable decision that

makes particular investigations unnecessary."  *Strickland*, 466 U.S. at 691.  "In any ineffectiveness

case, a particular decision not to investigate must be directly assessed for reasonableness in all the

circumstances, applying a heavy measure of deference to counsel's judgments."  *Strickland*, 466

U.S. at 691.  The reasonableness of counsel's actions can be determined or substantially influenced

by the defendant's own statements or actions.  *Id.*  The Supreme Court also held that, "[a]n error by

counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a

criminal proceeding if the error had no effect on the judgment." *Id*.  In this case, Williams has not established that his counsel failed to conduct himself below the standard of reasonableness.

Williams does not allege what additional investigation should have been performed by his counsel, and he fails to point to any deficiency in the investigation done.  As outlined above, the testimony at the post-conviction hearing, including that of Williams, clearly reflects that counsel met with Williams to prepare for trial.  Although counsel had no recollection of Williams telling him about any witnesses at the scene, Williams conceded in his testimony that he never gave any names to his counsel and did not have addresses for the alleged witnesses.  Counsel further testified that he had subpoenaed all of the police officers involved, the forensic expert, and the evidence custodian for trial.  He had discussed with Williams the dangers of his testifying at trial.  He told the Court at the hearing that he was well prepared to proceed to trial, and he had more than adequately challenged the stop, arrest, and seizure at the suppression hearing.

With respect to counsel's advice regarding the plea itself, his preparation provided him with knowledge of the four prior convictions had by Williams and led him to formulate an opinion with regard to whether Williams should testify and the benefits he would gain by accepting the plea offered by the State, including avoidance of a multiple bill.

Williams has failed to provide any showing of how counsel's investigation was deficient or prejudicial to the defense.  Without such a showing, he has not demonstrated that any deficiency forced him to enter the plea as he suggests.  The state courts' denial of relief on this issue is not contrary to, or an unreasonable application of, Supreme Court law.

## IX.    Recommendation

For the foregoing reasons, it is **RECOMMENDED** that John Freeman Williams's petition for the issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[50]

New Orleans, Louisiana, this 25th day of March, 2011.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[50]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.